UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80950-CIV-COHN/SELTZER

FRANCES BRYAN WILSON,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed, respectively, by Plaintiff Frances Bryan Wilson ("Claimant") and by Defendant Michael Astrue, Commissioner of Social Security ("Commissioner"). The motions were referred to United States Magistrate Judge Barry S. Seltzer pursuant to Magistrate Rules 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida.

The cross-motions present the following issue: whether there exists substantial evidence to support the determination by the Administrative Law Judge ("ALJ") that Claimant retains the capacity to perform her past relevant work and, therefore, is not disabled. The undersigned concludes that substantial evidence does support the ALJ's

---

[1] Although other circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383, 1389 (D.C. Cir. 1977), the Eleventh Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record. See Lovett v. Schweiker, 667 F.2d 1, 2 (5th Cir. 1981).

determination. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 11) be DENIED, that Defendant's Motion for Summary Judgment (DE 14) be GRANTED, and that the Commissioner's decision be AFFIRMED.

II.     PROCEDURAL HISTORY

Claimant applied for Disability Insurance Benefits ("DIB") on July 21, 2007, alleging disability as of February 1, 2007. Tr. 19, 98-100. In her Disability Report, she alleged disability due to diabetes, digestive problems, and arthritis. Tr. 111. The application was denied initially and upon reconsideration. Tr. 81-82, 85-88, 91-93. Thereafter, Claimant requested and was granted a hearing before an ALJ, which was held on August 1, 2008. Tr. 25-46. On September 19, 2008, the ALJ issued his decision, finding that Claimant was not under a "disability," as defined in the Social Security Act, from February 1, 2007, through the date of the decision. Tr. 19-24. On May 22, 2009, the Appeals Council of the Social Security Administration denied Claimant's request for review, which left the decision of the ALJ standing as the final decision of the Commissioner. Tr. 1-4.

On June 24, 2009, Claimant filed a Complaint commencing the instant action (DE 1). On October 27, 2009, the Commissioner filed an Answer (DE 8). On November 19, 2009, Claimant filed Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE 11), and on January 6, 2010, the Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law (DE 14).

The matter is now ripe for review.

III.    FACTS

The undersigned has reviewed the Statement of Facts contained within Defendant's Motion for Summary Judgment (DE 14) and finds that it fairly and accurately summarizes

the relevant portions of the administrative record.

Plaintiff filed her application for disability benefits under Title II on July 21, 2007 (Tr. 98-100). She stated that she was born in 1950, and alleged that she became disabled beginning February 1, 2007 (Tr. 98). In her Disability Report, she alleged disability due to diabetes, digestive problems, and arthritis (Tr. 111).

The medical evidence shows that Plaintiff was diagnosed with new onset diabetes in 1998, approximately nine years prior to her alleged onset of disability (Tr. 148-49). The record shows no further medical treatment until January 2007, when Plaintiff went to the emergency room with complaints of chest pain (Tr. 176-83). She was in no apparent distress (Tr. 181). Her glucose level was within the "normal" range at 99 (Tr. 192).

On February 28, 2007, Plaintiff returned to the emergency room with complaints of coughing, phlegm, and nausea (Tr. 167). She stated that she was taking no medications and had not recently seen a doctor (Tr. 167). Laboratory testing again showed Plaintiff's glucose level was within the "normal" range (Tr. 172).

On May 7, 2007, Plaintiff went to the emergency room with complaints of a sore throat, but left without being seen (Tr. 184, 201). She returned to the emergency room a few weeks later with complaints of leg pain (Tr. 195). She was treated with ibuprofen and aspirin (Tr. 197).

On January 10, 2008, Plaintiff saw Steven Kanner, D.O., for a consultative examination (Tr. 207-10). She stated that she had been hospitalized seven to eight times in the past year for uncontrolled diabetes, but that she was unable to afford treatment or medication (Tr. 207). Examination showed her blood pressure was 120/80 and her weight was 113 pounds (Tr. 208). She was in no acute distress, vision was 20/30 in both eyes, and her peripheral vision was intact (Tr. 208). Dr. Kanner found no evidence of hypertensive retinopathy (Tr. 208). There was also no evidence of motor deficits, sensory deficits, or muscle atrophy (Tr. 208). Examinations of her extremities, spine, and joints were all unremarkable (Tr. 209). Dr. Kanner found no evidence of active inflammation or arthritic changes, and she had a full range of motion in all joints (Tr. 209). Her grip strength was 4/5 with fine and gross

dexterity maintained (Tr. 209). Her gait was intact, she did not require an assistive device, and she had no difficulty rising from a chair to a standing position (Tr. 209). Laboratory testing showed her blood sugar level was 488 (Tr. 209). Dr. Kanner summarized that there was no evidence of retinopathy, neuropathy, or renal disease (Tr. 210). He opined that due to her poorly controlled diabetes Plaintiff would have difficulty walking, lifting, or carrying "for any period of time," but that she could sit and stand "without difficulty" (Tr. 210). Dr. Kanner opined that "routine medical care would reverse all her problems" (Tr. 210).

Plaintiff went to the emergency room on June 26, 2008, with complaints of coughing (Tr. 232). A chest x-ray showed pulmonary vascular congestion changes, with an impression of congestive heart failure (Tr. 232). Plaintiff's glucose level was high at 284 (Tr. 229). Diagnoses included acute bronchitis, alcohol intoxication, cough, and hyperglycemia (Tr. 228).

The record also contained residual functional capacity evaluations performed by state agency physicians (Tr. 211-26). On January 24, 2008, Gary Cater, D.O., reviewed the evidence of record and opined that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently, stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday (Tr. 212). He opined that Plaintiff had no other limitations (Tr. 212-15). Dr. Cater opined that although Plaintiff had uncontrolled diabetes mellitus, the medical evidence showed there was no end organ damage and that musculoskeletal examination was benign (Tr. 212).

Robert Whittier, M.D.,[2] reviewed the evidence on April 9, 2008, and also found that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently, stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday (Tr. 220). Dr. Whittier also opined that physical examination was "benign" with no end organ damage (Tr. 220).

---

[2] Although Dr. Whittier did not include his credentials on the RFC assessment, the reconsideration determination shows that he is a physician (Tr. 82).

4

> Plaintiff appeared and testified at an administrative hearing held on August 1, 2008 (Tr. 25-46). She stated that she was 57 years old and had a 12th grade education (Tr. 28[,30]). She testified that she had worked as a telemarketer for the past 15 years, and had also worked as a housekeeping supervisor for a few years (Tr. 30-31). At the time of the hearing Plaintiff was working part-time as a telemarketer (Tr. 38). She stated that she could only work a four hour shift because she was too tired to work full-time (Tr. 38).
>
> Plaintiff testified that she had had diabetes for about 10 years (Tr. 29). She did not seek regular medical treatment, but stated that when her blood sugar became elevated above 500 she went to the emergency room to receive an insulin injection (Tr. 34). Plaintiff testified that she had difficulty with her eyes (Tr. 33-34), and difficulty walking due to pain in her legs (Tr. 35). She stated that she could only stand for about 15 minutes, but that she could sit without restriction (Tr. 35). Plaintiff also testified that she had back pain (Tr. 36-37). She stated that she weighed about 120 pounds, having recently lost about 30 pounds (Tr. 29).
>
> Plaintiff stated that she enjoyed cooking (Tr. 38). She also stated that she smoked a package of cigarettes every two days, and drank one-half to one pint of vodka per week (Tr. 38-39). She testified that she attended church every Sunday from 9:00 a.m. to 2:00 p.m. (Tr. 39-40).

Defendant's Motion at 2-5 (DE 14).

IV.     STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the court's role is a limited one. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence" is evidence that a reasonable person would accept as adequate to support the challenged conclusion. Richardson, 402 U.S. at 401; Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment

for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

V.  ANALYSIS

    A.  The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). In determining the merits of a claim for benefits, the court must consider the evidence as a whole, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and (4) the claimant's age, education, and work history. Walden, 672 F.2d at 839.

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made. Id.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If a severe impairment is not found,

the ALJ will conclude that there is no disability; if a severe impairment is determined, the ALJ will proceed to the next phase of the analysis. Id.

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix I of the Regulations. 20 C.F.R. § 404.1520(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. Id. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all the relevant evidence," including medical evidence, the claimant's own testimony, and the observations of others. Id. The ALJ must then compare the RFC to the demands of the previous employment to determine whether the claimant is still capable of performing that type of work. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(e).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, the burden returns to the claimant to prove an inability to perform those jobs. Id. These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. § 404.1520(g)(1).

To help evaluate whether sufficient jobs exist which can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines ("guidelines"). See 20 C.F.R. Pt. 404, Subpt. P, App. 2. The guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. § 404.1569. The guidelines are composed of detailed grids and rules which, based on a claimant's RFC, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and RFC is not the same as the corresponding criterion of the rule." 20 C.F.R. § 404.1569. The guidelines, therefore, are not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). Further, they may not be used when the claimant suffers from significant non-exertional limitations, such as significant mental impairments. Id.; Walker, 826 F.2d at 1003. When the guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of RFC. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry his burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Wingo v. Bowen, 852 F.2d 827, 831 n.4 (5th Cir. 1988); Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Walker, 889 F.2d at 50.

B. <u>Application of the Sequential Evaluation by the ALJ</u>

After considering all of the evidence before him, the ALJ concluded that Claimant retains the capacity to perform her past employment and, therefore, is not disabled for purposes of the Social Security Act. Tr. 23-24.

In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[3] He first observed that Claimant had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 21. The ALJ next found that Claimant has the following "severe" impairments: "diabetes mellitus and arthritis." Tr. 21. The ALJ then found Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Tr. 21.

The ALJ then assessed Claimant's RFC. As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints. After reviewing the evidence and Claimant's testimony, the ALJ found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible . . . ." Tr. 22. And after considering the entire record before him, the ALJ found "that the claimant has the [RFC] to perform a full range of light work[4] as defined in 20 CFR 404.1567(b)." Tr. 21.

---

[3] Preliminarily, the ALJ noted that Claimant had acquired sufficient quarters of coverage to remain insured through December 31, 2011. Tr. 19, 21. Accordingly, the relevant period for analysis runs from the date of the alleged onset, February 1, 2007, through the date of the ALJ's decision, September 19, 2008.

[4] Significantly, if an individual can perform "light work," that individual can also perform "sedentary work." The Regulations define these two terms.

According to the Regulations, "light work" involves:

> [L]ifting no more than 20 pounds at a time with <u>frequent</u> lifting or carrying of objects weighing up to 10 pounds. Even though

> the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. <u>If someone can do light work, we determine that he or she can also do sedentary work</u>, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added). As utilized in the definition of "light work":

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. <u>Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.</u> They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, 1983 WL 31251, at *5-6 (S.S.A.) (emphasis added).

The ability to perform "light work," therefore, subsumes the ability to perform "sedentary work." According to the Regulations, "sedentary work" involves:

> [L]ifting no more than 10 pounds at a time and <u>occasionally</u> lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required <u>occasionally</u> and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a) (emphasis added). As utilized in the definition of "sedentary work":

More specifically, the ALJ found that Claimant can lift 20 pounds occasionally and 10 pounds frequently and can sit, stand, and/or walk for 6 hours in an 8-hour workday. Tr. 21.

Having found that Claimant is capable of performing "light work" – and, by implication, "sedentary work" – the ALJ next considered whether Claimant has the ability to perform her past relevant work as a telemarketer. Tr. 23-24. The ALJ noted Claimant's report that her telemarketing work required that she lift less than 10 pounds. Tr. 24. He further noted that the <u>Dictionary of Occupational Titles</u> (DOT, Vols. I and II. Fourth Ed., Rev'd 1991, Sec. 299.357-014), describes Claimant's telemarketing as "sedentary, semi-skilled work." Tr. 24. Then, comparing Claimant's RFC for "light work" with the physical and mental demands of telemarketing, a "sedentary" job, the ALJ found that Claimant is able to perform her past relevant work both as it is "actually and generally performed." Tr. 24.

Given that Claimant retains the capacity to return to her past relevant work, the ALJ concluded that she "has not been under a disability, as defined in the Social Security Act, from February 1, 2007 through the date of this decision [September 19, 2008]." Tr. 24.

---

"Occasionally" means occurring from very little up to one third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. <u>Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles</u>.

SSR 83-10, 1983 WL 31251, at * 5 (S.S.A) (emphasis added).

C.  Discussion

Claimant disputes the findings and conclusions of the ALJ. He argues that the ALJ erred by failing to: (1) properly consider and assess the consulting physician's opinion that Claimant's blood sugar was so poorly controlled that it would affect her ability to walk, lift or carry for any period of time; and (2) properly analyze the physical and mental demands of Claimant's previous job in finding that she is capable of performing her past relevant work as a telemarketer. Plaintiff's Motion at 3, 6-9 (DE 11). For the reasons set forth below, the undersigned does not find Claimant's arguments persuasive.

1.  Consulting Physician's Opinion

Claimant first argues that the ALJ failed to properly consider the opinion of the consultative physician, Steven Kanner, D.O., in finding that Claimant has an RFC for "light work." Id. at 6-9. More specifically, Claimant faults the ALJ for not specifically addressing Dr. Kanner's assessment that Claimant's poorly controlled blood sugar would "affect her ability to walk, lift, or carry for any period of time." Id.; Tr. 210. According to Claimant, the ALJ's failure to address these limitations undermines his own RFC finding because "light work" would require that Claimant stand or walk for a total of approximately 6 hours of an 8-hour workday, an activity precluded by Dr. Kanner's assessment. See SSR 83-10. The Commissioner counters that the ALJ's RFC assessment for "light work" was correct.

The opinion of a consulting physician who examines a claimant only once does not generally constitute substantial evidence. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). Nonetheless, an ALJ should indicate the weight he accords different medical opinions and the reasons therefor, see Sharfarz v. Bowen, 825, F.2d 278, 279 (11th Cir. 1987), although he need not "specifically refer to every piece of evidence," Dyer v. Barnhart,

395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

   Dr. Kanner provided the following summary of his findings:

   Based on my examination, [Claimant] has diabetes out of control, but there is no evidence of any retinopathy, neuropathy, or renal disease. <u>I feel this patient's blood sugar is so poorly controlled it will affect her ability to walk, lift, or carry for any period of time. I feel she can sit and stand without difficulty.</u> Her memory was good. She interacted well in the office. She had no difficulty with speech. Again, she is quite cachetic appearing, losing over 30 pounds in the past year. <u>Routine medical care would reverse all her problems</u>.

   Based on my examination, she has poorly-controlled diabetes with no end-organ damage secondary to diabetes, but again the diabetes is so poorly controlled that it has caused her weight loss and diabetes-related symptoms.

Tr. 210 (emphasis added). And in his subsequent Decision, the ALJ made the following reference to Dr. Kanner's findings:

   On January 10, 2008, the claimant underwent a consultative examination with Steven L. Kanner, D.O. Dr. Kanner reported that the claimant's diabetes was out of control, but there was no evidence of any retinopathy, neuropathy, or renal disease. He noted that she had poorly controlled diabetes, however, with no end-organ damage secondary to diabetes. He related that her memory was good and she interacted well in the office (Exhibit 6F).

Tr. 23. The ALJ, therefore, did not specifically comment on two significant findings by Dr. Kanner: his assessed limitations as to Claimant's "ability to walk, lift, or carry for any period of time"; and his observation that "[r]outine medical care would reverse all her problems."

   Although the undersigned agrees that the ALJ's rejection of Dr. Kanner's walking limitation should have been explicit, rather than implicit, and that he should have articulated his reason for discounting the walking limitation, the error is harmless because "the ALJ's conclusion <u>as a whole</u> [that Claimant is "not disabled"] was supported by substantial

13

evidence in the record." See Dyer, 395 F.3d at 1211 (referencing the pertinent standard of review) (emphasis and bracketed language added).

First, substantial evidence supports the ALJ's RFC finding for "light work." Although the ALJ did not specifically comment on Dr. Kanner's walking limitation, the ALJ did consider Dr. Kanner's opinion. He expressly noted Dr. Kanner's observation that Claimant's gait was intact; he also noted that Dr. Kanner found no evidence of any end-organ damage or motor loss and found that her grip and dexterity were all intact. Tr. 23, 208. In addition, Dr. Kanner reported that Claimant did not require an assistive device, had no difficulty rising from a chair to a standing position and initiating ambulation, and had no difficulty standing or sitting. Tr. 209, 210. These findings are significant as many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. See SSR 83-10. Furthermore, as the ALJ noted, two separate state agency physicians[5] did examine the record, and each opined that Claimant was capable of performing "light work." Tr. 23, 211-226. See 20 C.F.R. § 404.1527(f)(2)(i) (ALJ must consider findings of state agency physicians as highly qualified physicians who are also experts in Social Security evaluations). But perhaps most importantly, the ALJ found from the record "that the claimant's allegedly disabling impairment(s) was present at approximately the same level of severity prior to and on her [February 2007] onset date." Tr. 23. Stated differently, the record contains no evidence of significant deterioration in the

---

[5] The state agency reviews were conducted by Gary Cater, D.O., and by Robert Whittier, M.D. Tr. 211-226. Perhaps because Robert Whittier did not include his credentials on the RFC assessment, Tr. 226, Claimant argues that he is not a physician. The reconsideration determination, however, shows that Robert Whittier is a physician. Tr. 82.

10 years since Claimant was first diagnosed with diabetes. Tr. 29. See Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (absent significant deterioration, impairment not considered disabling where claimant had previously worked with that same impairment). That the record reveals no material change in the severity of Claimant's impairment(s) is significant because following her 1998 diabetes diagnosis, yet prior to her February 2007 onset date, Claimant managed to work for several years as a hospital housekeeper, which is classified as "medium work." Tr. 30, 31, 41. See Dictionary of Occupational Titles (4th Ed., Rev'd 1991, Sec. 323.687-010). Hence, given that Claimant was able to perform "medium work," the absence of any material change in her condition compels a conclusion that she can perform "light work." See 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work.").

Second, even if the ALJ erred in finding that Claimant could perform "light work," the error remains harmless. Were the ALJ to have accepted Dr. Kanner's findings in their entirety, he would still have had to conclude that Claimant is "not disabled" because Dr. Kanner had found that "all [Claimant's] problems" could be resolved with "[r]outine medical care." Tr. 23, 210. The Regulations make clear that a claimant who fails to follow prescribed treatment, absent good reason,[6] cannot be found disabled. 20 C.F.R.

---

[6] Claimant told the ALJ that she could not afford medical treatment and is now seeking Medicaid. However, Claimant did not on a regular basis seek any treatment that is offered to indigents; nor has she foregone smoking (a half a pack of cigarettes a day) and drinking alcohol to help finance her medications. Tr. 34, 38-39. One record from Good Samaritan Medical Center Emergency Services shows multiple diagnoses for Claimant, including alcohol intoxication at what appears to be a "severe" level. Tr. 228, 229. See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (allegation that claimant could not afford medication was inconsistent with the fact that he did not seek treatment offered to indigents or choose for forgo smoking three packages of cigarettes each day to help finance medications). And although Claimant did go to the hospital occasionally for her

§ 404.1530(b). Here, the ALJ specifically noted that Claimant had failed to seek regular treatment medical treatment: "The Claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. She has poorly controlled diabetes that essentially is not being treated." Tr. 23.

Moreover, any error in the ALJ's RFC assessment would be harmless because the ALJ did not rest his ultimate conclusion on a finding that Claimant could perform "light work." Rather, the ALJ rested his conclusion that Claimant is "not disabled" on a finding that Claimant could return to her past job as a telemarketer, which is defined as "sedentary work." See discussion infra at 17-18. Indeed, with respect to her actual job requirements, Claimant conceded that her telemarketing position required nothing more than the ability to sit, which both Claimant and Dr. Kanner reported was not limited:

> Q: And how long can you sit?
>
> A: All day, if I can.
>
> Q: That's wh[y] you can be a telemarketer, right? Because you sit all day.
>
> A: That's why I took the job, Your Honor.

Tr. 35. Significantly, Claimant never hinted, let alone claimed, that her telemarketing job required that she stand and/or walk more than she was able. Indeed, her purported reason for not working full-time had nothing to do with her alleged (in)ability to stand and/or walk; rather, she told the ALJ that she had stopped working full-time because she was getting tired and falling asleep on the job. Tr. 38, 40. That Claimant continued to work as a telemarketer – albeit, part-time – even after her alleged onset of disability lends further

---

insulin injections, she did not do so on a regular basis. Tr. 34.

support to the ALJ's finding that she could return to that work full-time. Tr. 23. According to the ALJ: "The fact that the impairment(s) does not prevent the claimant from currently working part time strongly suggests that it would not currently prevent [substantial gainful activity]." Tr. 23. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain.").

In sum, even if the ALJ erred in not articulating his reasons for rejecting Dr. Kanner's limitations on walking, the error is harmless. The record contains substantial evidence of Claimant's ability to perform "light work." Yet, even if Claimant's alleged limitations on walking currently precluded her from performing "light work," her limitations can be reversed with "[r]outine medical care." Tr. 210. And even if Claimant's current limitations on walking could not be reversed, her past "sedentary work" as a telemarketer does not require activity that is inconsistent with either Dr. Kanner's assessed limitations or with Claimant's own reported limitations.

2.   Analysis of Past Relevant Work

Claimant next argues that the ALJ did not properly analyze the physical and mental demands of Claimant's previous job in finding that she is capable of performing her past relevant work as a telemarketer. See Plaintiff's Motion at 9 (DE 11). The undersigned does not agree.

In his Decision, the ALJ noted that a claimant will be found "not disabled" when she can perform either the actual demands and duties of a particular past job or the demands and duties of the job as generally required by employers throughout the economy. Tr. 24 (citing SSR 82-61). The ALJ then noted that Claimant had described her past work as lifting

less than 10 pounds.[7] Tr. 24. In addition, at the hearing, Claimant acknowledged that she took the telemarketing job because it allowed her to sit all day. Tr. 35  Furthermore, the ALJ consulted the <u>Dictionary of Occupational Titles</u> ("DOT"), which may be relied upon to determine whether individual can perform a job as it is generally performed. <u>See</u> SSR 82-61.  The ALJ noted that the <u>DOT</u> describes Claimant's past telemarketing work as sedentary and semi-skilled. Tr. 24 (citing <u>DOT</u>, Vols. I and II, Fourth Ed., Rev'd 1991, Sec. 299.357-014).  The ALJ then compared Claimant's RFC (for "light" and, therefore, also "sedentary" work) with the physical and mental demands of her past telemarketing work and found that she is capable of performing that work as it is both actually and generally performed. Tr. 24. Based upon this finding, the ALJ correctly concluded that Claimant has not been under a disability, as defined in the Social Security Act, from the alleged onset date, February 1, 2007, through the date of the Decision.

## VI.    RECOMMENDATION

Claimant had a fair hearing and full administrative consideration in accordance with the applicable statutes and regulations.  Substantial evidence in the record as a whole supports the ALJ's finding that Claimant's past work as a telemarketer does not require the performance of work-related activity precluded by her RFC. The ALJ, therefore, correctly concluded that  Claimant is not entitled to Disability Insurance Benefits. Accordingly, the undesigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 11) be DENIED, that Defendant's Motion for Summary Judgment (DE 14) be GRANTED, and that the Commissioner's decision be AFFIRMED.

---

[7] In considering Claimant's description of her past work, the ALJ misstated an exhibit number as 4E, rather than 2E.  Tr. 24.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the district judge of an issue covered in the report and shall bar the parties from attacking, on appeal, factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. <u>See</u> 28. U.S.C. § 636(b)(1); <u>Nettles v. Wainwright</u>, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 1ST day of February 2010.

_____
BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable James I. Cohn
United States District Court

Adam Neidenberg, Esq.
1214 South Andrews Avenue, Suite 301
Fort Lauderdale, Florida 33316-1128
Attorney for Claimant Frances Bryan Wilson

David I. Mellinger, Esq.
Assistant United States Attorney
500 East Broward Blvd., 7th Floor
Fort Lauderdale, Florida 33301-3002